**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Kenis Adalberto Lopez Gonzalez,

Plaintiff,

v.

Markwayne Mullin, *in his official capacity as Secretary of Homeland Security*; U.S. Department of Homeland Security; David Venturella, *in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement*; U.S. Immigration and Customs Enforcement; Todd Blanche, *in his official capacity as Attorney General of the United States*; Marco Rubio, *in his official capacity as Secretary of State*; and Sam Olson, *in his official capacity as Field Office Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*,

Defendants.

File No. 26-CV-04507 (JMB/DTS)

**ORDER**

---

E. Michelle Drake and Joseph Hashmall, Berger Montague PC, Minneapolis, MN; and Simon Sandoval-Moshenberg (pro hac vice) and Courtney E. Moran (pro hac vice), Murray Osorio PLLC, Fairfax, VA, for Plaintiff Kenis Adalberto Lopez Gonzalez.

David W. Fuller, United States Attorney's Office, Minneapolis, MN; and David R. Hackworthy, U.S. Department of Homeland Security, Minneapolis, MN, for Defendants Markwayne Mullin, U.S. Department of Homeland Security, David Venturella, U.S. Immigration and Customs Enforcement, Todd Blanche, Marco Rubio, and Sam Olson.

---

This matter is before the Court on Defendants Markwayne Mullin's, U.S. Department of Homeland Security's (DHS), David Venturella's, U.S. Immigration and Customs Enforcement's (ICE), Todd Blanche's, Marco Rubio's, and Sam Olson's

Emergency Motion to Stay the Court's October 30, 2026 Order granting Plaintiff Kenis Lopez Gonzalez's Motion for Preliminary Injunction (Doc. No. 30 [hereinafter, "PI Order"]). (Doc. No. 31.) For the reasons explained below, the Court denies the motion and declines to issue a stay.

## FACTS[1]

Lopez is a native of Nicaragua who, after coming to the United States in 2022, applied for asylum. (Doc. No. 1-6 ¶¶ 1–2.) DHS granted Lopez withholding of removal based on his credible fear of returning to Nicaragua and permitted Lopez to live in the community on an order of supervision (OSUP). (*Id.* ¶ 2.) While on release, Lopez complied with all conditions of his OSUP, had no criminal offenses, and was a productive member of society. (*Id.* ¶¶ 3–4.) Nevertheless, and for unknown reasons, on the morning of January 15, 2026, eight ICE agents swarmed Lopez outside of his home and detained him; they also confiscated his order of withholding of removal, his work permit, his REAL ID, and his OSUP. (*Id.* ¶ 5.) Defendants' agents did not tell Lopez why he was being detained.

For the next seven-and-a-half months, Defendants shuffled Lopez between four different detention camp facilities, during which time they did not advise Lopez of any plan to remove him in the reasonably foreseeable future. (*Id.* ¶¶ 7–8, 12–13.) On the morning of August 28, 2026, while on a tarmac aboard a bus filled with several dozen shackled non-

---

[1] The Court's findings of fact relevant to this motion are set forth in full in the PI Order and are incorporated here by reference. Because the PI Order sets forth detailed findings of fact, the Court only briefly summarizes the factual background here.

citizen detainees, DHS agents informed Lopez that he would be flown to the Central African Republic. (*Id.* ¶ 16.) Lopez and others repeatedly expressed fear; Defendants' agents responded by laughing at Lopez and the other shackled detainees before shooting at them with rubber bullets from close range. (*Id.* ¶¶ 16–18.) Ultimately, Defendants transported Lopez and the others to the Central African Republic. (*Id.* ¶¶ 20–23.)

On October 16, 2026, Lopez filed this action, asserting the following five, separate causes of action: (1) that Defendants violated the APA and the *Accardi* doctrine by removing him from the United States without first following applicable DHS regulations (specifically 8 C.F.R. §§ 208.31, 241.8(e)–(f), 1208.31) meant to determine whether he had reasonable fear of being removed to the Central African Republic; (2) that Defendants violated his rights to procedural due process under the Fifth Amendment by purporting to revoke his OSUP and not conducting a reasonable fear interview or otherwise be heard on any claim for protection; (3) that Defendants violated the APA and the *Accardi* doctrine by revoking his OSUP without providing the process required by applicable DHS regulations (specifically 8 C.F.R. § 241.4(l), 241.13(i), 241.13(j)); (4) that Defendants violated the APA by removing him from the United States in violation of 8 U.S.C. § 1231(b)(3); and (5) that Defendants violated the APA and the Fifth Amendment by retaining identification documents after removal. (Doc. No. 1 ¶¶ 133–68.)

On October 22, 2026, Lopez filed a motion for preliminary injunction seeking, among other things, an order for his return to the United States. (Doc. No. 7.) In response, Defendants argued that the Court could not issue any ruling on the propriety of DHS's third-country removal policy due to the pendency of *D.V.D. v. U.S. Department of*

*Homeland Security*, 821 F. Supp. 3d 102 (D. Mass. 2026), a class action in the District to Massachusetts, and that 8 U.S.C. § 1252(g) acts as a jurisdictional bar of this Court's review of DHS's decision to remove Lopez from the United States. Defendants made no jurisdictional challenge to the claims in Counts II and III concerning the decision to detain Lopez without first revoking his prior order of release and the failure to follow any process due to Lopez, who had been granted the benefit of release.[2] (*See* Doc. No. 18 at 39–44.)

In the PI Order, the Court concluded that Lopez carried his burden on each of the four *Dataphase* factors. Specifically, the Court concluded that Lopez was likely to succeed on his claims (Count II, in part, and Count III), that Defendants violated the Due Process Clause, the APA, and their own regulations.[3] (PI Order at 21–26.) The Court also concluded that Lopez is experiencing and will continue to experience irreparable harm based on the unrebutted testimony in Lopez's sworn declaration that, while in the Central African Republic, he lacks any immigration or residency status, he cannot earn a living, he

[2] The Court is aware of no basis to challenge jurisdiction to determine the legality of detaining someone without first revoking a prior release order—and, indeed, without any process whatsoever. The provisions of section 1252(g) are necessarily narrowly construed, and the prohibition on judicial review of an agency decision to "execute removal orders" cannot prohibit challenges to agency action concerning revocation of prior orders of release. *E.g.*, *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 19 (2020) (cautioning that the jurisdictional limits under section 1252(g) are "narrow," and apply only to the "review of cases 'arising from' decisions 'to commence proceedings, adjudicate cases, or execute removal orders.'"); *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 n.3 (2018) (concluding that section 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions, [but] . . . refers to just those three specific actions themselves" and expressly declining to "follow th[e] logic" that detention is an action arising from the government's decision to execute removal orders.)

[3] Defendants presented no facts or argument that they complied with these regulations or that they could prevail in establishing compliance.

is confined in a continuously guarded building, he relies on the charity of an non-governmental organization to survive, he is at risk of becoming dangerously ill from malaria, and he is prohibited from going outside due to the presence of dangerous armed gangs and corrupt law enforcement officers (which was corroborated by official statements researched and published by the Department of State, under the direction of Defendant Marco Rubio). (*Id.* at 17–20.) The Court also concluded that the public interest is served when Defendants act in accordance with established law. (*Id.* at 26–27.)

Consistent with the steps identified by a DHS declarant, Deportation Officer Van der Vaart (Doc. No. 21), the Court ordered Defendants to arrange for and facilitate Lopez's return to the United States. (PI Order at 28–30.) The Court also clarified that the Order was preliminary, it was entered "without prejudice to any claim, defense, or request for further relief in this action, and "[n]othing in this Order shall be construed to, and does not, adjudicate the validity of the IJ's order for Lopez's removal or withholding of removal or DHS's policy of third-country removals." (*Id.* at 30.) Indeed, the Court invited motions to "stay, sever, dismiss, or transfer the claims that are . . . similar to those in *D.V.D. v. U.S. Department of Homeland Security*, 821 F. Supp. 3d 102 (D. Mass. 2026)," but Defendants have not filed any such a motion. (*Id.*) Finally, the Court ordered Defendants to return all property taken from Lopez, provide documentation concerning return of property, and refrain from shooting Lopez with rubber bullets or other projectiles.[4] (PI Order at 29–30.)

[4] Defendants do not ask this Court to stay the portions of the PI Order requiring return of property, ordering Defendants to submit documentation regarding return of property, and enjoining Defendants from shooting Lopez. Thus, these portions of the PI Order are uncontested. *See* Fed. R. Civ. P. 8(a)(2)(A) (requiring a party to first make a motion to the

## DISCUSSION

Defendants now move for a two-week stay of the portions of the PI Order regarding returning Lopez to the United States. (Doc. No. 32 at 15.) Because Defendants have not satisfied the standard for a stay, the Court denies the motion.

Under Federal Rule of Appellate Procedure 8(a), a party seeking a stay of a district court order pending an appeal of that order must "first move in the district court." Fed. R. App. P. 8(a)(1). However, the Court's issuance of "a stay is not a matter of right." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted). Instead, the propriety of issuing a stay is within the district court's discretion and "is dependent upon the circumstances of the particular case." *Id.* (citation omitted). When considering the propriety of a stay under the circumstances, the Court weighs the following four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured absent a stay;
>
> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
> (4) where the public interest lies.

*Medtronic Sofamor Danek, Inc. v. Gannon*, No. 17-CV-0943 (SRN/FLN), 2017 WL 5135556, at *2 (D. Minn. Nov. 3, 2017) (quoting *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011)). The parties requesting the stay—here, Defendants—have the

---

district court for a stay of a preliminary injunction (or make a showing why doing so was impracticable) and requiring a denial of that motion by the district court before the party could request a stay from the court of appeals).

burden to establish these factors. *Id.* at *2 (citing *Fargo Women's Health Org. v. Schafer*, 18 F.3d 526, 538 (8th Cir. 1994)). The Court addresses each factor below.

**A. Likely to Succeed on the Merits**

The Court first considers whether Defendants have made a strong showing that they are likely to succeed on the merits of their appeal. *Id.* at *2. For the following reasons, this Court concludes they have not.

First, Defendants are unlikely to succeed on appeal because they have—rather surprisingly—mischaracterized the claims raised in the Complaint. Though Defendants correctly identify the claims raised in this case that resemble those in *D.V.D. v. U.S. Department of Homeland Security*, 821 F. Supp. 3d 102 (D. Mass. 2026), Defendants ignore the other asserted claims that are unique to this case. Counts I, II (in part), and IV are similar to the issues raised in *D.V.D.*, and the Court invited Defendants to bring a motion to sever, dismiss, or stay consideration of these claims. (PI Order at 26 n.14; *see also id.* at 30 (expressly stating that "[n]othing in this Order shall be construed to, and does not, adjudicate the validity of the IJ's order for Lopez's removal or withholding of removal or DHS's policy of third-country removals").) No such motion has been filed.[5] Should either party file such a motion, the Court will duly consider it. Importantly, these claims did not form the basis of the Court's PI Order. Instead, the Court based its decision and relief on the claims raised in Counts II (in part) and III concerning Defendants' failure to comply with the requirements of due process, the APA, and sections 241.4(l), 241.13(i),

[5] In fact, in email correspondence with Judge Bryan's Courtroom Deputy, Defendants have cancelled a hearing date they had reserved on the Court's calendar for a motion to dismiss.

241.13(j). The Court's decision to focus on particular claims in the PI Order and not to address each and every count of the Complaint is consistent with well-established legal principles. *E.g.*, *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 880 (1984) (concluding that class action judgments are limited only to the claims at issue and do not impact a plaintiff's ability to raise individual claims not addressed in the class action); *Minnesota Min. & Mfg. Co. v. Taylor*, 21 F. Supp. 2d 1003, 1004 (D. Minn. 1998) ("A preliminary injunction is appropriate if any one of a plaintiff's claims supports such relief." (citing *Metric & Multistandard Components Corp. v. Metric's, Inc.*, 635 F.2d 710, 715 (8th Cir. 1980)). To prevail on the merits of their appeal, Defendants would have to persuade the Eighth Circuit to create a new rule of law, one that would allow interim injunctive relief only if the plaintiffs establish a probability of success on each and every claim raised in the complaint. It is unlikely that the Eighth Circuit will do so.

Second, the claims and supporting facts presented to and addressed by the Court were almost entirely uncontested. Defendants presented no facts or argument that they had complied with the regulations governing OSUP and the process due to non-citizens who have received the benefit of release pending immigration proceedings. Absent any facts or argument otherwise, the Court could reach only one conclusion: that Lopez was likely to prevail on his claims that Defendants detained him without first revoking his OSUP and that Defendants made no attempt to comply with the requirements of due process, the APA, and sections 241.4(l), 241.13(i), 241.13(j). To be clear, Defendants filed no exhibits or documentation that rebuts Lopez's sworn account that the manner of his arrest and

detention did not comply with applicable regulations.[6] Thus, when reviewing the record before the Court on the motion for preliminary injunction, the Eighth Circuit will have no record evidence that DHS had any plan whatsoever to effect Lopez's removal at the time of his January 2026 arrest, let alone that DHS knew it would remove Lopez in the reasonably foreseeable future. The presumptively unconstitutional length of Lopez's ensuing seven-and-a-half-months' detention and threadbare state of ICE's record of that detention belies any suggestion otherwise. *See generally Zadvydas v. Davis*, 533 U.S. 678 (2001) (holding that detention after entry of a final order of removal that exceeds six months is presumptively unconstitutional).

Thus, for Defendants to prevail on the merits of their appeal of the Court's conclusions concerning Defendants' failure to comply with due process, the APA, and sections 241.4(l), 241.13(i), 241.13(j), as asserted in Counts II and III, Defendants must present new evidence to the Eighth Circuit and convince the court to make new factual findings based on such evidence. Because that would contradict bedrock principles of appellate review, the Court concludes that, given the record presented to this Court

---

[6] Many of Lopez's sworn factual statements are corroborated by the research and official statements of the Department of State. Although Defendants refer to the Court's reference of these materials as "the Court's own research" (Doc. No. 32 at 5), counsel for Defendants present no evidence of their own, and they develop no argument concerning whether the Court is precluded from refering to these official government statements. Absent any argument, the Court remains convinced that, as recently reiterated by the Eighth Circuit, it is proper to take judicial notice of such materials: "Where, as here, neither party disputes the accuracy of the content on these public websites, we take judicial notice of them." *Twin Cities Safety, LLC v. Moe*, 139 F.4th 1015, 1019 n.6 (8th Cir. 2025) (citing *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 793 (8th Cir. 2016)). Thus, Defendants are not likely to prevail on appeal if they choose to develop an argument that the Court improperly relied on the research and official statements of the Department of State.

concerning compliance, Defendants are unlikely to prevail on the merits of their appeal.

Third, the facts and basic principles of due process likely prevent Defendants from succeeding on the merits of their appeal. Even under the most liberal interpretation of Defendants' submissions, the Court discerns only one point that could be responsive to the claims in Counts II and III that Defendants failed to comply with due process, the APA, and sections 241.4(l), 241.13(i), 241.13(j) related to the prior release order granted to Lopez. That point comes when Defendants, in passing, characterize the failure to follow sections 241.4(l), 241.13(i), 241.13(j) as merely a "paperwork problem." (Doc. No. 32 at 10.) This position has little chance of prevailing on appeal. For one thing, this response presumes, or possibly even concedes, noncompliance. For another, this response renders unenforceable and meaningless regulations that, once properly promulgated, have the force of law, like a statute or a holding from this or any other Article III court. *See e.g.*, *Chrysler Corp. v. Brown*, 441 U.S. 281, 296 (1979) ("It has been established in a variety of contexts that properly promulgated, substantive agency regulations have the 'force and effect of law.'"); *Resol. Tr. Corp. v. Home Sav. Of Am.*, 946 F.2d 93, 96 (8th Cir. 1991) (explaining that "[f]ederal regulations have the force and effect of law"); *Red School House, Inc. v. Off. of Econ. Opportunity*, 386 F. Supp 1177, 1191 (D. Minn. 1973) (observing that "[v]alidly issued regulations of an administrative agency have the force and effect of statutes"). Further, contrary to the position that failure to provide adequate notice is merely a "paperwork problem," it is well established that notice and opportunity to be heard are fundamental to due process, especially when, as here, a person's liberty is at stake. *E.g.*, *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (recognizing that "the right to notice and an

opportunity to be heard" have been "the central meaning of procedural due process" for "more than a century" and they "may not be eroded," but instead "must be granted at a meaningful time and in a meaningful manner" (citations omitted)); *Stump v. Bennett*, 398 F.2d 111, 114 (8th Cir. 1968) (noting that "[t]he fundamental bases of 'due process' relate to adequate notice and reasonable opportunity to be heard" (citing *Hovey v. Elliott*, 167 U.S. 409, 413–418 (1897))). Therefore, it is unlikely that the Court of Appeals will adopt such a callous view of the facts and a disregard of law as necessary to concur with Defendants' position and hold that the deprivations alleged in this case regarding the prior order of release can be recast as unimportant clerical matters.

Finally, Defendants are unlikely to succeed on an appeal premised on the Court's alleged misapplication of *Dataphase*'s balance-of-harms and public-interest factors. Defendants assert that there is tension between "complying with regulations" and "the government's interest in enforcing immigration laws." (Doc. No. 32 at 6 (asserting this Court erred in balancing harms and weighing public interest factors because "the Court found complying with regulations outweighed the government's interest in enforcing immigration laws").) This argument has no merit. There is no tension between enforcing immigration law and complying with federal regulations. Put simply: complying with applicable federal enforcement regulations *is* enforcing immigration law. To make this specious argument, Defendants stretch the meaning of the phrase "enforcing immigration laws," a phrase that is loaded with political and ideological meaning. Defendants' actions and decisions during Operation Metro Surge are not automatically or necessarily equivalent to enforcing federal law. Moreover, Defendants identified only one concrete harm caused

by being ordered to facilitate Lopez's return to the United States and ensure he has received the process due ten months ago—the cost of Lopez's transportation back to the United States. Thus, contrary to Defendants argument now, the Court concluded that the harms faced by Lopez outweigh the cost to Defendants of facilitating his return and that the public interest is always served by requiring Defendants to comply with their own regulations. *See Orellana Quintanilla*, 836 F. Supp. 3d 591, 606 (D. Md. 2026); *R.I.L.R. v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) ("The public interest is served when administrative agencies comply with their obligations under the APA." (citation omitted)); *see also, e.g.*, *Nebraska v. Biden*, 52 F.4th 1044, 1047 (8th Cir. 2022) ("[T]he equities strongly favor an injunction considering the irreversible impact [the challenged agency] action would have as compared to the lack of harm an injunction would presently impose."). Therefore, it is unlikely that the Eighth Circuit will accept Defendants' mischaracterization and conclude (1) that this Court held compliance with federal regulations outweighed the Government's interest in enforcing the law, and (2) that such a conclusion was erroneous.

In sum, Defendants have not demonstrated any likelihood of success on appeal, and this factor weighs against issuing a stay.

**B. Irreparable Injury to Defendants Absent a Stay**

Next, the Court considers whether Defendants "will be irreparably injured absent a stay." *Medtronic*, 2017 WL 513556, at *2. For Defendants to succeed on this prong, they "must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utilities Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996). Defendants argue that they will be irreparably harmed by facilitating Lopez's

return to Minnesota because, in their view, their appeal of the PI Order will become moot. This argument is not likely to prevail on appeal for at least two reasons.

First, Defendants' identify a single harm: the financial cost of transporting Lopez back to the Central African Republic in the event the Eighth Circuit reverses the PI Order. However, "'economic loss does not, in and of itself, constitute irreparable harm.'" *Data Axle, Inc. v. CFM Data Network, LLC*, No. 23-CV-3255 (LMP/DLM), 2025 WL 1733378, at *3 (D. Minn. June 23, 2025) (quoting *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996)). In addition, such a cost comprises an insignificant fraction (possibly as small as one-millionth) of the billions that DHS is allocated each year.

Second, to the extent that portions of Defendants' written submissions advance alternative arguments that absent a stay, their hands are unduly tied or the appeal is moot, the Court cannot agree. Defendants suggest that the PI Order unduly prohibits their ability to proceed against Lopez in immigration court. (Doc. No. 32 at 11 (asserting that the PI Order blocks Defendants from "re-doing Plaintiff's OSUP revocation").) Once again, Defendants misread the PI Order. The PI Order requires "Defendants to restore Lopez to the conditions of the OSUP in effect before his detention on January 15, 2026" and orders that Defendants shall not "revoke [Lopez's] OSUP or otherwise detain him *except in compliance with all statutory and regulatory requirements*." (PI Order ¶ 3 (emphasis added).) Assuming they follow federal law, Defendants are not prohibited in any way from proceeding against Lopez in immigration court. Similarly, Defendants' appeal is not rendered moot by a denial of the motion to stay. As noted above, Defendants do not dispute that they failed to follow any process at all before detaining Lopez, making it quite probable

that Lopez will prevail on his claims of due process, APA, and regulatory violations. Instead, Defendants argument to this Court, and thus, the only argument they can properly bring before the Eighth Circuit, is that by removing Lopez to the Central African Republic, Defendants have cured or rendered moot Lopez's claims. In other words, the issue of whether Respondents can avoid accountability for uncontested deprivations of due process by a separate deprivation and wrongful deportation remains a live controversy. There is no authority for such a proposition and as noted above, Defendants are unlikely to convince the Eighth Circuit to create new law in this way. Nevertheless, the issue is not moot and Defendants may advance this argument, regardless of where Lopez is living.

Therefore, this factor does not weigh in favor of issuing a stay.

### C. Substantial Injury to the Other Parties Interested in the Proceeding

Next, the Court asks "whether issuance of the stay will substantially injure the other parties interested in the proceeding"—here, Lopez. *Medtronic*, 2017 WL 513556, at *2. Defendants argue only that the United States has received diplomatic assurances from the Central African Republic that Lopez will not be persecuted or tortured in their country. (Doc. No. 32 at 11.) In this way, Defendants restate their argument in opposition to the preliminary injunction, one the Court has already rejected. As they did in opposing the injunction request, Defendants once again conflate the standard for obtaining asylum or withholding or removal with the inquiry into harm or substantial injury, which courts assess on interim injunction requests and motions to stay pending appeal. As before, Defendants set forth no authority to support the proposition that absent a showing he is being tortured, Lopez can face no discernible harm or risk of injury for purposes of the injunction request

and Defendants motion to stay. Nor do Defendants make any argument concerning the reliability of generic statements of assurance, especially given the specific warnings from the Department of State and its conclusion that armed opposition soldiers are the de facto government large areas of the country. *See Central African Republic Country Security Report*, OSAC.GOV (Apr. 7, 2025), https://www.osac.gov/Content/Report/ec7088ab-8d38-4df1-bb99-1c8e3afc6ee5 [https://perma.cc/SZ45-5VMU]. Defendants' failure to carry their burden on this factor weighs against issuing a stay.

### D. Public Interest

Finally, the Court considers "where the public interest lies." *Medtronic*, 2017 WL 513556, at *2. Defendants make no good-faith attempt to argue this factor. This factor, too, weighs against issuing a stay.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Defendants' Emergency Motion to Stay (Doc. No. 31) is DENIED.

Dated: November 9, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court